THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE COSTILLO, a/k/a Jose Costilla, Defendant-Appellant.

First District (2nd Division)   No. 1—90—3496

Opinion filed December 8, 1992.

Gary W. Adair, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Rebecca Davidson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

Defendant was charged with first-degree murder. After a bench trial, defendant was found guilty of first-degree murder and sentenced to 40 years' imprisonment. He appeals from the conviction and sentence imposed.

On appeal, defendant contends that (1) the trial court erred in denying his motion to suppress statements; (2) the trial court erred in denying his motion to suppress his lineup identification; (3) the trial court erred in refusing to admit evidence of the victim's aggressiveness; (4) the evidence is insufficient to prove him guilty beyond a reasonable doubt of murder; and (5) the sentence of 40 years' imprisonment is excessive. We affirm the decision of the trial court.

On August 3, 1989, Corey Davis was shot and killed in Chicago, Illinois. On August 17, 1989, defendant was charged with the murder of Davis. Prior to trial, defendant moved to suppress statements he made to the police and his lineup identification. At the hearing on defendant's motions, Detective Lawrence Tuider testified that he separately advised defendant of his *Miranda* rights and that defendant appeared to understand these rights. Detective Maslanka also testified that his partner, Detective John Paladino, advised defendant of his *Miranda* rights and that defendant understood them. After the detectives told defendant certain facts about the investigation and the allegations against him, defendant agreed to give a statement. The conversation lasted about 15 minutes. After making his statement, defendant told the detectives that he wanted to speak to his lawyer. The detectives ended the conversation at that time. Detective Maslanka further testified that one of the two people who viewed the lineup identified defendant.

Defendant testified at the motion to suppress hearing on his own behalf. He stated that he was never read his *Miranda* rights. The police officers at Area 3 wanted him to give them a "little story" regarding Davis' death, but defendant told them he had nothing to say and that he wanted to see his lawyer. The officers told defendant that attorney Gary Adair had called, but that he should not worry about it. Defendant stated that he never waived his rights in writing and that

no lawyer ever entered the room while the police questioning was in progress.

Both sides stipulated to attorney Adair's testimony that he was hired to represent defendant, and that prior to defendant's arrest, he advised defendant not to make any statements to the police. It was also stipulated that attorney Adair spoke to Sergeant Byrnes and Detective Tuider prior to defendant's arrest and told them that he would surrender defendant and that he advised his client not to talk to the police. After defendant was arrested, attorney Adair spoke with Detectives Holmgren and Paladino. He told them that he was defendant's attorney and that he advised defendant to remain silent. Attorney Adair informed the police that he wanted to be present for any lineup proceedings.

After enumerating detailed findings, the trial court denied defendant's motion to suppress his statement and his motion to suppress the lineup identification.

At trial, Lawrence Smith, the State's only occurrence witness, testified to the following facts: On August 3, 1989, at approximately 3:30 p.m., Smith, his uncle Joseph Gales and Davis left a store and were walking east on the south side of 51st Street. Smith observed defendant sitting with three other males and two females on a porch. Defendant asked them what gang they belonged to and told them that they were in the wrong territory. All of the persons on the porch, including defendant, gathered around Smith and his two companions. As Smith and his companions attempted to push their way through, one of the females passed a .22 automatic weapon to defendant. Defendant stated that they (Smith and his companions) were not going to go anywhere. Defendant shot Davis, who was approximately eight feet from him. Smith, Gales and Davis ran in different directions. Defendant chased Davis and continued shooting at him. Smith did not see what else happened to Davis because Smith and Gales ran in another direction. Gales fell and was beaten on the head by the two men who had chased him.

Smith ran until he reached his mother's house. There, he called the police. Next, Smith went to Davis' house to tell Davis' mother that her son had been shot. Smith returned to the scene and led the police and medical personnel to Davis' body.

On that same day, Smith went to the gang crimes office at 35th and Lowe and identified defendant from a book of mug shots of gang members. About two weeks later, Smith identified defendant in a lineup as the person who shot Davis.

On cross-examination, Smith testified that he had known Davis for about three years. He did not know whether or not Davis was a gang member. He stated that Davis was not an aggressive person and did not own or possess a gun at the time of his death.

Detective Paladino testified that on August 3, 1989, he and his partner received an assignment that a man was shot at 1323 West 51st Street. When they arrived on the scene, they went straight to the empty lot. They spotted five casings and observed a small amount of blood at the location where Davis' body was found. Detective Paladino interviewed several people including Smith and Gales regarding the homicide. Smith and Gales accompanied the detective to Area 3, where Smith identified defendant from a gang book. Paladino obtained a warrant for defendant's arrest.

Detective Paladino testified that at the time of defendant's arrest, he read defendant his rights. Defendant indicated that he understood these rights. Defendant gave the police his account of what happened on August 3, 1989. Defendant told the police that he was standing at 1319 West 51st Street when Davis walked by with his hat cocked to the right. This showed disrespect to defendant because he was a Latin King. Defendant told Davis to straighten his hat out, but Davis said no. Davis then pulled out a .38 revolver and fired one shot at defendant. Elizabeth Santoyo, who was present, handed defendant a .22 automatic. As Davis ran away, defendant fired one shot at him. Davis allegedly fired two more shots at defendant, but defendant did not return any shots because his gun jammed. Defendant then chased Gales down the street, caught him and with the help of two others "beat the shit out of him." After beating Gales, defendant ran back to the scene and threw the gun away.

On cross-examination, Detective Paladino testified that defendant's statement was oral and given in narrative form. He was aware that defendant had a lawyer, but was not aware that defendant did not wish to make a statement. Defendant did not have any problem understanding what the detective asked him and responding.

Detective Paladino was questioned about the police report which indicated that two guns were involved in the incident. Paladino testified that the evidence showed that at least one gun was involved. Some people who heard the shots thought that they came from two different calibers of guns.

The parties entered into several stipulations. The first stipulation was that evidence technicians recovered five .22 caliber cartridge casings from the vacant lot. All of the casings came from the same gun. They further stipulated that the medical examiner's testimony would

be that Davis died of a gunshot wound to the abdomen with perforation of the aorta. It was also stipulated that one .22 caliber bullet was removed from Davis' body. However, it was not established that it came from any of the casings that the police recovered.

Martha Reyes, Elizabeth "Lisa" Santoyo and Miguel Ruffin gave similar testimony: That on August 3, 1989, they were sitting on the porch with defendant when Davis approached the group wearing a hat that was tilted to the right. Defendant told Davis to fix his hat, and Davis replied that "gangsters rule the city." Defendant told Davis to leave and defendant started walking away. Smith reached into a grocery bag, removed a black pouch and took a big gun out of the pouch. Davis took the gun and shot at the group. No one was hit.

The defendant got a gun and shot back once, but missed. Davis and his friends ran. Davis still held the gun. Reyes and Santoyo testified that they heard some more shots, and then they heard defendant say that his gun was jammed. Defendant and the other men on the porch chased Davis and his friends.

Ruffin testified that Davis ran through the alley while the other two men ran down the block. Davis fell in the street, then ran across the street shooting. He shot out a car window. Defendant was by the car on 51st Street.

Ruffin further testified that he, defendant and the other two males on the porch were Latin Kings. When the shooting occurred, they were all in Latin King territory.

Defendant called several witnesses for the purpose of establishing that Davis had a violent nature. The State objected to the proposed testimony of Officer Lawrence Heise. The trial court sustained the objection. Defendant was allowed to make an offer of proof by way of Officer Heise's testimony. Officer Heise testified that on May 17, 1989, he arrested Davis for unlawful possession of a .32 caliber revolver. Davis was arrested on May 17, 1989, about six to eight blocks from where he was eventually killed.

Officer William Voight testified that on July 17, 1989, he arrested Davis for disorderly conduct because Davis refused to stop swinging his arms at two police dogs. He also testified that Davis was under the influence of alcohol.

Eighteen-year-old Cinetta Tate, mother of Davis' two children, testified that on May 31, 1989, she had an argument with Davis. He smacked her and she smacked him back. She never called the police.

Jewel Owens testified that a television was thrown through her window on December 26, 1988. She suspected that Davis threw it, but

stated that she did not see him do it. Davis was visiting her 13-year-old daughter, against Owens' wishes.

Defendant claims that the trial court erred when it denied his motion to suppress the statement he made to the police. He contends that it was involuntary because (1) he did not waive his *Miranda* rights in writing; (2) the State failed to call a material witness at the hearing on his motions to suppress; (3) his statement was given after his right to counsel was invoked; and (4) he did not possess the requisite mental capacity necessary to waive his *Miranda* rights.

Whether a statement is voluntary depends on the totality of the circumstances. The test is whether the statement was made freely and without compulsion or inducement of any sort and whether the defendant's will was overcome at the time he confessed. (*People v. Hunley* (1989), 189 Ill. App. 3d 24, 37, 545 N.E.2d 188.) The trial court does not have to be convinced beyond a reasonable doubt, and its decision will not be reversed unless it is against the manifest weight of the evidence. *Hunley*, 189 Ill. App. 3d at 38.

■ An express written waiver of fifth amendment rights is not necessary to establish waiver. (*North Carolina v. Butler* (1979), 441 U.S. 369, 373, 60 L. Ed. 2d 286, 292, 99 S. Ct. 1755, 1757.) The operative question is whether defendant knowingly and voluntarily waived his *Miranda* rights. The police testified that they read defendant his *Miranda* rights. Defendant indicated to the police that he understood these rights and agreed to waive them.

Defendant also argues that his confession was involuntary because the State failed to call Detective Paladino, a material witness, at the hearing on defendant's motions to suppress. Under the material witness rule, the State must produce all material witnesses to an allegedly involuntary confession. (*People v. Bell* (1971), 50 Ill. App. 3d 82, 86, 365 N.E.2d 203.) In *Bell*, the prosecution called Sergeant Raymer, who took defendant's confession. Raymer testified that he was with defendant 99% of the time. Raymer admitted that defendant originally did not want to make a statement. During Raymer's absence, two other officers spoke with defendant and defendant subsequently gave a statement. The appellate court held that the material witness rule applied since Raymer could not testify as to what had occurred in his absence.

The instant case is distinguishable from the *Bell* case. Although Detective Paladino did not testify at the hearing, his partner, Detective Maslanka, testified. Maslanka testified that he was in the room with Detective Paladino and defendant from the time defendant was advised of his rights, until defendant requested that the interview be

terminated. Defendant made no allegations that he and Detective Paladino were ever alone. In the instant case, there was no evidence that defendant was induced to make a statement or that his will was overcome when he confessed.

Defendant cites to *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, for the proposition that a confession is inadmissible if it is obtained after a defendant requests counsel. In the case at bar, defendant did not ask to see his lawyer until after he had given the police his statement.

Defendant refers this court to *People v. Smith* (1982), 93 Ill. 2d 179, 442 N.E.2d 1325, and *People v. Visnack* (1985), 135 Ill. App. 3d 113, 481 N.E.2d 744, and states that "there can be no knowing waiver of the right to counsel if the police prior to or during custodial interrogation refuse access to an attorney retained to assist the suspect and the suspect is not informed." In the instant case, however, defendant's attorney did not try to consult with defendant after the arrest.

Defendant maintains that his right to counsel attached when he was arrested because the State committed itself to his prosecution, and adversarial judicial proceedings had begun. A defendant's sixth amendment right to counsel does not attach until after prosecution has begun, that is at or after the initiation of adversary judicial criminal proceedings have begun whether by way of formal charge, preliminary hearing, indictment or arraignment. (*People v. Hayes* (1990), 139 Ill. 2d 89, 123, 564 N.E.2d 803, citing *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877, and *Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232.) The fact that an arrest warrant was issued does not mean that the State is committed to prosecuting defendant. We shall return to this issue at a later time.

Defendant further argues that he did not possess the requisite level of comprehension to make a knowing and intelligent waiver because of his history of psychological and mental problems. He cites to *People v. Bernasco* (1990), 138 Ill. 2d 349, 562 N.E.2d 958, where the court held that Bernasco's *Miranda* waiver was not knowing and intelligent because of his deficiencies. Bernasco had no prior criminal experience, he had a beginning fourth-grade reading and comprehension level, he was diagnosed as being in the bottom of the slow learner range and he was not capable of understanding the terminology of the *Miranda* warnings. In the instant case, defendant did have a prior criminal record. At the hearing on his motion to suppress, he

did not appear to have any problems hearing, understanding or answering any of the questions asked of him. There is no evidence in the record that supports defendant's argument that he lacked sufficient mental capacity to understand and waive his *Miranda* rights. The trial court's finding that defendant voluntarily gave his statement is not against the manifest weight of evidence. There is no basis to disturb the trial court's decision denying defendant's motion to suppress statements made to the police.

Defendant also contends that the trial court erred in denying his motion to suppress his lineup identification. Defendant claims that the lineup violated his fifth amendment right to remain silent and his sixth amendment right to counsel.

■■ The State argues that defendant waived this argument because he failed to raise this issue in his motion for a new trial. Generally, failure to raise an issue in a motion for a new trial results in waiver of that issue for purposes of appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) However this court will review this argument because it is a constitutional issue which defendant raised at trial. *Enoch*, 122 Ill. 2d at 190.

Initially, we note that in *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877, the Court held that the privilege against self-incrimination is not applicable to lineups. The Court cited to *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, where defendant claimed that his fifth amendment privilege against self incrimination was violated. The *Wade* Court stated:

> "We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have." (*Wade*, 388 U.S. at 222, 18 L. Ed. 2d at 1154-55, 87 S. Ct. at 1930.)

Therefore, the lineup did not violate defendant's fifth amendment rights.

Defendant argues that his sixth amendment right to counsel was triggered when the police obtained the arrest warrant. A person's sixth amendment right to counsel attaches at the commencement of adversarial judicial proceedings, whether by way of a formal charge, preliminary hearing, indictment, information or arraignment. *Hayes*, 139 Ill. 2d at 123.

In *People v. Wilson* (1987), 116 Ill. 2d 29, 50-51, 506 N.E.2d 571, a complaint for an arrest warrant was presented to a judge pursuant

to statute. The complaint was presented to the judge *ex parte*, by a police officer rather than by an assistant State's Attorney, and was not filed until after defendant appeared in a lineup. The court held that the procedure followed did not initiate adversarial proceedings against defendant. Defendant in *People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38, was interrogated by police and eventually confessed to a murder. Defendant argued that police obtained his statement by violating his sixth amendment right to counsel, which attached at the time that the police interrogated him. The court held that his sixth amendment right to counsel had not attached at the time of his interrogation because formal adversary judicial proceedings had not commenced. Only a complaint for preliminary examination charging defendant with murder had been obtained.

In determining whether a defendant's sixth amendment right to counsel attaches once a criminal complaint is filed, the degree of prosecutorial involvement must be considered. (*Hayes*, 139 Ill. 2d at 125.) In *Hayes*, the prosecutor reviewed the criminal complaint against that defendant before it was filed in the circuit court. The court determined that involvement was not significant enough to indicate a commitment by the State to prosecute defendant.

In the instant case, an assistant State's Attorney approved the application for the issuance of an arrest warrant. No formal charge had been filed against defendant at the time he gave the statement or was placed in the lineup. Therefore, the giving of the voluntary statements or the lineup did not violate defendant's sixth amendment rights. This was not significant prosecutorial involvement to invoke the sixth amendment right to counsel.

Defendant contends that the trial court erred by refusing to allow him to introduce testimony that 2½ months prior to Davis' death, Davis was arrested for unlawful possession of a weapon. Defendant argues that this evidence supported his theory that he acted in self-defense because it shows that Davis was a violent person, citing to *People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018, and *People v. Keefe* (1991), 209 Ill. App. 3d 744, 567 N.E.2d 1052.

In *Lynch*, defendant wanted to introduce evidence that the victim had three convictions for battery to support his claim that the victim was the aggressor and he shot the victim in self-defense. The trial court ruled that the prior convictions were irrelevant and inadmissible because defendant was unaware of the convictions when he shot the victim. Defendant was convicted of involuntary manslaughter. The Illinois Supreme Court reversed the judgment and remanded the case for retrial, holding that "when the theory of self-defense is raised, the

victim's aggressive and violent character is relevant to show who was the aggressor, and the defendant may show it by appropriate evidence, regardless of when he learned of it." *Lynch*, 104 Ill. 2d at 200.

Defendant in *Keefe* was prohibited from questioning the victim and a witness about the victim's character for violence. The two men were involved in an altercation where defendant stabbed Davis, but only after the victim had punched defendant twice. At trial, defendant argued that he acted in self-defense. On appeal, defendant contended that the trial court committed error by ruling that evidence of the victim's violent character was inadmissible. The appellate court reversed defendant's convictions and held that the exclusion of evidence of the victim's propensity for violence was error. *Keefe*, 209 Ill. App. 3d at 756.

■ The instant case is distinguishable from *Lynch* and *Keefe*. The testimony regarding the unlawful possession of a weapon charge that the trial court ruled inadmissible does not show that Davis had a propensity for violence. In that incident, Davis (the victim in this case) was on the street when the police observed him. When the police stopped their vehicle, Davis ran. The police arrested Davis and found a loaded .32 caliber revolver on his person. There was no evidence in the record that Davis brandished the gun or used it in any way. As the trial court noted, mere possession of a gun does not indicate that Davis was violent. The victim in *Lynch* had prior battery convictions and the victim in *Keefe* fought with defendant prior to being stabbed and had been previously hospitalized for injuries sustained in fights. The trial court here admitted similar evidence of Davis' violent acts from witnesses Tate and Owens. The refusal to admit evidence that the victim was arrested for unlawful possession of a firearm was not error.

Defendant's next contention is that the State failed to prove him guilty beyond a reasonable doubt of murder because the State's eyewitness' testimony was not clear and convincing and was contradicted.

The relevant question on review when faced with a challenge to the sufficiency of the proof "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453.

■ The evidence that the State presented showed that defendant shot and killed Davis. Defendant admitted in his statement that he fired at Davis. Defendant's own witnesses testified that defendant

was armed with a .22 automatic and shot Davis. The evidence established that Davis was killed with a bullet from a .22 caliber weapon and that five casings from a .22 caliber gun were recovered from the scene. Defendant claims that Davis shot first and that he shot back in self-defense. A police report indicated that persons at the scene thought they heard two different types of shots. However, Smith testified that Davis was unarmed. Furthermore, there was no physical evidence to support defendant's claim. There were no bullets recovered from the porch where Davis allegedly shot into the group, and there were no bullets found near the car that Davis allegedly shot.

Defendant maintains that reasonable doubt was created because Smith's testimony was not clear and convincing and was contradicted by defendant's statement. "[T]he testimony of one identification witness, if positive and credible, is sufficient for a conviction." (*People v. Wehrwein* (1989), 190 Ill. App. 3d 35, 39, 545 N.E.2d 1005.) "In a bench trial it is for the trial judge to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317, citing *People v. Berland* (1978), 74 Ill. 2d 286, 381 N.E.2d 254, and *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 378 N.E.2d 1318.) The trial court's judgment will only be set aside if the "proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt." (*Slim*, 127 Ill. 2d at 307.) In the instant case, the trial court heard the testimony of the State's eyewitness and the contradictory testimony of the defense witnesses. The trial court found the State's evidence to be sufficient to prove defendant guilty beyond a reasonable doubt. The evidence in the instant case is not so unsatisfactory, improbable or implausible as to justify a finding of reasonable doubt as to defendant's guilt.

Defendant's final contention is that his 40-year sentence was excessive. He argues that the trial court chose to ignore evidence that defendant was young, employed, and had speech and hearing problems. Additionally, he argues that the trial court disregarded evidence that Davis was an aggressive and combative person.

■ Under Illinois law, the entire spectrum of facts surrounding an incident must be analyzed and evaluated to determine whether a defendant's sentence is excessive. Because the trial court is in a better position to consider the myriad of factors involved, the trial court's sentence will not be disturbed on review absent an abuse of discretion. (*People v. Bishop* (1989), 179 Ill. App. 3d 99, 103, 534 N.E.2d 401.) In the instant case, the trial court considered the statu-

tory factors in mitigation, it had a presentence report, it considered evidence offered by defendant and others, it heard counsel's arguments on defendant's behalf and gave defendant the opportunity to make a statement on his own behalf. The court also discussed deterrence. The trial court did not abuse its discretion in sentencing defendant.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SCARIANO and DiVITO, JJ., concur.