2024 IL App (1st) 230674-U

No. 1-23-0674

Order filed November 22, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 08848 |
| | ) | |
| DONNELLE THURMAN, | ) | Honorable |
| | ) | Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Justice Oden Johnson and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the defendant's conviction for first degree murder over his contention that the trial court denied him a fair trial, where defendant testified to his state of mind in support of his claim of self-defense.

¶ 2    Following a jury trial, defendant Donnelle Thurman was found guilty of first degree murder and sentenced to 53 years' imprisonment. On appeal, defendant argues the trial court abused its discretion by preventing him from testifying about his experience with firearm violence and his belief that the neighborhood where the murder took place was dangerous in support of his theory of self-defense. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged by indictment with multiple offenses arising from the shooting death of Willie Clarke. The State proceeded on two counts of first degree murder. The facts of the shooting are largely uncontested.

¶ 5     Omri Robinson testified that early on April 27, 2018, she was in a vehicle with defendant, defendant's brother Javier Thurman, and their friend Kenichi Sims. Javier was driving, defendant was in the front passenger seat, and Robinson and Sims were in the back seat. The group pulled into a parking lot for Robinson to use an ATM. While she withdrew cash, a man walked through the parking lot. Defendant exited the vehicle and walked toward the man to get a cigarette. When asked about the shooting that followed, Robinson answered that she did not recall. Robinson admitted to giving a statement to police, and when asked if she testified before the grand jury in this case, she answered, "I believe so."

¶ 6     Assistant State's Attorney Ben Williams testified that he had questioned Robinson before the grand jury. Parts of her grand jury testimony were read into the record. In her grand jury testimony, Robinson testified that defendant took a handgun with him when he exited the vehicle to ask the man in the parking lot for a cigarette. Robinson asked the others why defendant took the handgun, and Javier said he did not know. She heard a gunshot, looked out the window, and saw a green light beam on the man in the parking lot. She heard two more shots and saw the man fall to the ground and defendant run back to the vehicle. Defendant held a handgun, but Robinson could not see whether the man held anything. The others asked defendant why he shot the man, and defendant answered that "it looked like he was pulling something out." The four of them left in the vehicle.

¶ 7    Chicago Police Officer John Nagle testified that around 2:30 a.m. on April 27, 2018, he and his partner responded to a report of shots fired at the Aldi parking lot on 63rd Street. There, Nagle found a man lying unresponsive on the ground with a hole in his shirt and abdomen and a pack of cigarettes on the ground next to him. State identification in the man's wallet revealed his name was Willie Clarke. He did not have a weapon.

¶ 8    Chicago police detective Joseph Paoletti testified that he also observed Clarke lying on the ground in the parking lot, face up. Paoletti retrieved surveillance video from nearby buildings. This footage was published and admitted into evidence and has been reviewed by this court. It shows a vehicle at an ATM and two men walking toward each other across a parking lot. One man raises his arm in front of him as he advances, and the second man continues toward him with his hands at his sides. The first man then walks backward while the second man continues forward. A light flashes from the end of the first man's outstretched hand and the second man collapses. The first man runs back to the vehicle, which drives away.

¶ 9    William Jackson, an evidence technician with the Chicago police, testified that he photographed the area and recovered two 9-millimeter shell casings on the ground near Clarke's body and a shell fragment on Clarke's left side. Dr. Emily Hansen, who performed an autopsy on Clarke, testified that Clarke died of blood loss from the gunshot wound to his abdomen, and that she recovered one bullet from his body. Police later recovered a firearm, which forensic analysis showed fired the shell casings found at the scene of the shooting.

¶ 10    Defendant testified that, on the night of April 26, 2018, he was driving around aimlessly with his brother Javier and friends Sims and Robinson. After midnight, they stopped at the Aldi parking lot for Robinson to use the ATM. While waiting for Robinson to withdraw cash, defendant

saw a man—later identified as Clarke—walking through the empty parking lot. Defendant yelled at Clarke, asking if he could buy some loose cigarettes. Clarke said yes, and defendant exited the vehicle and walked toward him. Defendant had a firearm in his jacket pocket.

¶ 11    The following exchange then occurred:

> "[DEFENSE COUNSEL]: [W]hy were you carrying that gun that night?
>
> [DEFENDANT]: Due to previous situations that I had been in, I always kept a gun on me as protection.
>
> [DEFENSE COUNSEL]: And that—And when you talk about previous incidents, what are you referring to?
>
> [ASSISTANT STATE'S ATTORNEY]: Objection.
>
> THE COURT: Basis?
>
> [ASSISTANT STATE'S ATTORNEY]: Its irrelevant.
>
> THE COURT: Sustained."

The court then held a sidebar. Defense counsel made an offer of proof that defendant would testify that he had been shot three times in the past and knew himself to be in a violent neighborhood that night. Counsel argued this testimony would support defendant's claim of reasonable self-defense. The State argued that because defendant was the aggressor, he was not entitled to a self-defense instruction.

¶ 12    The trial court sustained the objection, finding defendant's past experience was irrelevant and he was the aggressor. The court said, "Again, let me be clear, he can testify as to what happened that night but he is not going to be testifying as to previous situations that he was in, period." When

the jury returned, defendant further testified, "I carry a gun all the time for protection. It's something I have done since I was young."

¶ 13    Defendant testified that he told Clarke he wanted to buy two cigarettes for a dollar. Clarke then said "something derogatory," but defendant did not remember exactly what. Defendant replied, "You're tripping." The two continued to approach each other. Clarke then "made the insinuation that he would take what I had if I didn't like what he had said or what the price was" and made a movement toward defendant, "like a jumping motion towards somebody to, like, frighten them." Defendant "was in fear of what [Clarke] might do" and drew his handgun. He pointed it at Clarke and told Clarke to back up. Clarke said, "What the f*** is that supposed to do? You know what I did done before." Defendant walked backward and Clarke continued advancing. Clarke reached his right hand toward his left waist and "started to retract his hand in a motion to, like, as if he was pulling something." Defendant could not see what Clarke was reaching for because it was dark, but he believed Clarke was reaching for a weapon, and he feared for his life.

¶ 14    Defendant fired his handgun and saw Clarke fall. Defendant testified, "I stared for a brief moment and then in shock I ran to the car." One of his companions asked, "Why the f*** did you do that?" Defendant responded that Clarke was reaching for something. All four left in the vehicle and took defendant to his cousin's house. Police arrested defendant approximately a month later and interviewed him at a police station, where he denied knowledge of the shooting. At trial, defendant admitted he lied because he did not trust the police. On cross-examination, defendant admitted he was a convicted felon and was not legally allowed to carry a firearm.

¶ 15    In closing, defense counsel claimed the video evidence showed that defendant attempted to withdraw from Clarke by backing away and Clarke threatened him by continuing to advance.

Counsel argued that defendant reasonably believed Clarke was reaching for a weapon, and defendant shot Clarke in self-defense.

¶ 16    The court instructed the jury as to first degree murder, the lesser offense of second degree murder based on unreasonable self-defense, and self-defense. The jury found defendant guilty of first degree murder and found that defendant personally discharged a firearm that proximately caused the death of another person. Defendant moved for a new trial arguing that, among other things, the court erred by limiting his testimony as to why he was carrying a firearm and "his life experiences which had a direct bearing on his mental state at the time of the offense." The trial court denied the motions.

¶ 17    Following a hearing, the trial court merged the two counts and sentenced defendant to 28 years in prison for the murder plus a mandatory firearm enhancement of 25 years, for a total prison term of 53 years. The court denied defendant's motion to reconsider the sentence. This timely appeal followed. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); Ill. S. Ct. R. 606 (eff. Mar. 12, 2021).

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, defendant argues the trial court abused its discretion by preventing him from testifying about why he was carrying a firearm. He argues that because this testimony went to his state of mind at the time of the shooting, it was necessary for presenting his theory of self-defense.

¶ 20    Defendant contends that we should apply *de novo* review, arguing that the issue presented is a purely legal question of whether the trial court violated his constitutional right to present a defense. However, it is well settled that we review a trial court's evidentiary rulings for abuse of discretion. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 107 (citing *People v. Adkins*, 239 Ill. 2d 1, 23 (2010)). A trial court abuses its discretion when its ruling is arbitrary, fanciful, or

unreasonable, or where no reasonable person could agree with the court's position. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). Even if a court abuses its discretion, we will not reverse unless the error resulted in substantial prejudice affecting the outcome of the trial. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 21    A criminal defendant who asserts self-defense has the right to present evidence of his state of mind to show he reasonably believed his use of force was necessary. *Harmon*, 2015 IL App (1st) 122345, ¶ 108; see also *People v. Keefe*, 209 Ill. App. 3d 744, 751 (1991) ("The determinative question where deadly force is used is whether defendant's belief that it was necessary to use deadly force was reasonable under the circumstances."). As long as defendant's belief was reasonable, he may assert self-defense even if he was mistaken about the imminent danger. *Keefe*, 209 Ill. App. 3d at 751. In such a case, exclusion of defendant's state-of-mind testimony is ordinarily reversible error unless sufficient evidence of his intent is otherwise admitted. *People v. Christen*, 82 Ill. App. 3d 192, 194 (1980). But where substantial evidence of the reasons for defendant's fear is admitted, exclusion of further evidence elucidating those reasons may be harmless. *Harmon*, 2015 IL App (1st) 122345, ¶ 119; *People v. Damnitz*, 269 Ill. App. 3d 51, 60-61 (1994); *People v. Parker*, 194 Ill. App. 3d 1048, 1058-59 (1990).

¶ 22    A defendant claiming he or she reasonably believed that the use of force was necessary should be given broad latitude to testify to that belief. *People v. Hawkins*, 296 Ill. App. 3d 830, 835 (1998) ("Where the intention, motive or belief of the accused is material to the issue, he is allowed to testify directly to that fact, and to have the circumstances surrounding the act considered in connection with his testimony."); *cf. Keefe*, 209 Ill. App. 3d at 751-52 (explaining that where there is "some reasonable basis" for defendant's self-defense claim, excluding state of mind

testimony is ordinarily reversible error). The circuit court, however, also has discretion to " 'reject offered evidence on grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty, or possibly unfair prejudicial nature.' " *People v. Jones*, 2024 IL App (1st) 221555, ¶ 64 (quoting *People v. Wheeler*, 226 Ill. 2d 92, 132 (2007)). Here, the circuit court acted within that discretion when it excluded defendant's proposed testimony as to other shootings on relevance grounds.

¶ 23    Defendant argues that the circuit court nonetheless abused its discretion when it excluded defendant's testimony that he was fearful because he believed he was in a dangerous neighborhood. This testimony relates to defendant's state of mind and seems appropriate, but its exclusion, even if an abuse of discretion, does not mandate reversal. Defendant gave substantial testimony as to his state of mind at the time he shot Clarke. Defendant testified that he carried a firearm for protection "[d]ue to previous situations" he had been in, that he believed Clarke was threatening him and reaching for a weapon, and that he was afraid. Specifically, defendant explained that Clarke insinuated that "he would take what [defendant] had" and made threatening movements toward him. Defendant stated he "was in fear of what [Clarke] might do" and drew his handgun from his pocket. Clarke continued to threaten him and advance toward him. When Clarke attempted to retrieve from his waistband what defendant believed to be a weapon, defendant feared for his life and shot him. This testimony adequately communicated defendant's fearful state of mind, past exposure to violent situations, and intent to defend himself. Any error in limiting his testimony was harmless. See *Damnitz*, 269 Ill. App. 3d at 59-61 (exclusion of defendant's experience of violence from victim's gang was harmless error where substantial evidence was admitted concerning that gang's rivalry with defendant's own and defendant's fear of the victim);

see also *Parker*, 194 Ill. App. 3d at 1058 ("even though [defendant] was not allowed to detail the reasons for his nervousness, the fact that he was nervous did get into the record").

¶ 24                                    III. CONCLUSION

¶ 25     The judgment of the circuit court of Cook County is affirmed.

¶ 26     Affirmed.