THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK UPTON, Defendant-Appellant.

First District (4th Division)  No. 1—90—1792

Opinion filed May 21, 1992.

John L. Stainthorp, of Peoples Law Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Laura L. Morrison, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant was found guilty of attempted murder, two counts of aggravated battery and armed violence. He was sentenced to concurrent terms of six years for attempted murder and armed violence and two years for aggravated battery. On appeal, defendant contends that the trial court committed reversible error in refusing to instruct the jury on the offense of reckless conduct and in barring him from testifying as to his state of mind at the time of the offenses.

The charges arose out of the shooting of Michael King on November 16, 1988. At trial, King testified that at approximately 9 p.m., pursuant to a work order from his employer, he and his partner, David Lawrence, drove to a parking lot at 2220 South Prince-

ton Avenue in Chicago, Illinois, to repossess a 1982 Firebird automobile on which the payments were more than five months delinquent. The truck they were driving was a 1987 Chevrolet Sierra, which was equipped with chains, a boom and sling for hoisting and towing a vehicle and had identification on both doors of the cab. The truck also had an amber light on the roof, but it was not activated. After locating the Firebird car and verifying its identification number, King and Lawrence hooked the chains to the car's front axle. King reentered the driver's side of the truck while Lawrence was trying to open the door to put the car in the proper gear for towing.

As the car was being lifted, Lawrence told King that someone was coming from the building which was 40 to 50 yards away. King then heard a voice shout, "hey," and said to Lawrence, "let's get out of here." As King began to drive away, Lawrence jumped onto the back of the truck and made his way into the passenger's door. They were exiting the parking lot when King heard a gunshot. The bullet struck the metal boom on the rear of the truck. King quickly drove out of the lot and as he turned left onto Princeton Avenue, he saw defendant approximately one car length behind the Firebird. Defendant was running behind the car and pointing a gun at the truck. When King turned forward again, he heard a second shot and felt something pierce his back. He drove to a nearby hospital where he was treated for a gunshot wound.

David Lawrence's testimony was similar to that of King. Lawrence added that he heard someone shout "hey" and more words which he could not discern. He saw defendant, approximately 50 yards away, begin to run toward them from the lawn behind the building. After climbing into the truck, he looked back and saw defendant remove a gun from his waistband and point it at eye level toward the back of the truck. Lawrence shouted a warning to King and then ducked down. He heard a gunshot and a bullet strike the boom of the truck. When he looked up again, he saw defendant still running behind the car with his gun pointed at the truck. He heard a "pop" and saw flames from the gun. Lawrence later returned to the lot with police officers and found a bullet shell near the end of the driveway.

On cross-examination, Lawrence stated that although defendant initially began running directly toward the driver's side of the truck, he then changed his direction slightly and, instead, ran up behind the car. As the truck quickly exited the lot, the car bounced slightly.

Police officer Ricky Edwards testified that when no one answered his knock, he left a business card at defendant's apartment with a message asking defendant to contact him. Upon his arrival back at the police station, he received a call from defendant. Edwards returned to defendant's residence and transported him to the police station where, after questioning, defendant was placed under arrest.

Sandra Norton, defendant's fiance, testified that shortly after 9 p.m., she looked out the bedroom window which overlooked the parking lot and saw a dark-colored truck and two men standing on the driver's side of defendant's car. One of the men was trying to open the window; the other entered the truck and began raising the car. She did not see any lights or markings on the truck. She awoke defendant and told him that someone was tampering with his car. Defendant "popped up," looked out the window, dressed, told her he was going to see what was going on, and left. She saw defendant waving his arms, and heard him shouting "hey, what are you doing with my car?" The man standing next to it looked up and then jumped onto the truck and into its cab. The truck then drove off. Defendant fired a shot from the grassy area as the truck was almost across Princeton Avenue. She left the room and did not see the second shot. Defendant's brother arrived and, sometime later, defendant returned and called the police. On cross-examination, Norton denied that defendant was in an angry mood when he arrived home. She did not know the length of the lawn but stated that "it's very long."

Defendant testified in his own behalf as follows. His car had been burglarized and vandalized on several prior occasions. He also had numerous mechanical problems with the vehicle. On his way home from work on the evening of events at issue, the car broke down on the expressway and had to be towed back to his building's parking lot. Shortly after he arrived home, he went to sleep. He was awakened by Norton, who told him that someone was breaking into his car. He looked out the window and saw someone pulling the car window open. He could not see the man clearly because they lived on the seventh floor, it was dark outside, he was not fully awake and was not wearing his glasses. He hurriedly dressed, removed his gun from a locked drawer and ran down the stairs. He ran across the lawn between the building and the parking lot waving his arms and shouting at the man standing next to his car. He noticed what looked like a pickup truck; it did not resemble a tow truck such as the one that had towed his car earlier that evening.

As he was running and shouting, the man motioned to someone inside the truck to start moving and then jumped over the rear of the truck as it was pulling out of the parking lot and turning left onto Princeton Avenue. The truck was moving quickly, causing the car to bounce several times. He believed that the men were stealing his car, and when it appeared they were about to get away with it, he drew his gun from his waistband.

Direct examination continued as follows.

"[Defense counsel] Q. What did you do next after removing the gun?

[Defendant] A. I aim [sic] the gun towards the air.

Q. Before you aimed the gun, did you do something with the gun?

A. Well, yeah, I never even intended on shooting or hurting anybody.

[Prosecutor]: Objection to what he intended doing, Judge.

[THE COURT]: Sustained.

Q. Just tell us what you did after removing it from your waistband, did you do something with the gun before it was ready to fire?

A. Well, I had to put a bullet in the chamber, yes.

Q. How did you that?

A. I had to cock the gun and remove both safeties.

Q. What did you do then?

A. I then fired the gun towards the top of the truck.

Q. Why did you do that?

A. I fired the gun to prolong them, you know, to detour [sic] them, to stop them, because I didn't know who they were. I had no idea who they were.

Q. What did you do?

A. I ran behind them still yelling with the gun in my hand.

Q. What did you do then?

A. I fired another shot. I was trying to hit the rear tires of the truck."

He was still "quite a ways" from the truck when he fired the second shot. He chased the truck until it turned off of Princeton Avenue and he lost sight of it. When he returned home he called the police. Two officers arrived and completed a stolen vehicle report after which he and his brother drove around looking for the car. When his brother brought him home he found the card from the police. He immediately telephoned one of the officers, who returned to

his residence and drove him back to the police station where he was questioned and placed under arrest.

Direct examination concluded as follows.

"[Defense Counsel] Q. When you shot the gun that night, did you shoot with the intent to kill Mr. King?

[Prosecutor]: Objection.

[THE COURT]: Sustained.

Q. Why did you shoot the gun that night?

[Prosecutor]: Objection.

[THE COURT]: Sustained.

Q. Did you intend to cause great bodily harm to Mr. King?

[Prosecutor]: Objection.

[THE COURT]: Sustained."

On cross-examination, defendant acknowledged that he was several months behind in his payments on the car, but he denied that he had been notified of its imminent repossession or that he told the responding officers that he had made a payment the previous month. He told the responding officers that he had chased the vehicle and fired two shots at it and showed them his firearm identification card.

Police officer Pokrovac testified that sometime after 9:30 p.m., he and his partner were dispatched to defendant's apartment to complete a stolen vehicle report. On cross-examination, Pokrovac stated that defendant told him the car was taken by a tow truck and that he had made a payment on it the previous month. He denied that defendant informed him that he owned a gun or that he had fired it when his car was being towed away.

Tyres Upton, defendant's brother, testified that defendant told Officer Pokrovac about the shooting and produced his firearm identification card. Pokrovac asked where the gun was, but then said "never mind," and left.

Defendant tendered instructions on the offense of reckless conduct. The State objected, and the court refused the instructions. It was the State's theory in closing argument that defendant knew that the men were lawfully repossessing his car and that he shot at them from close range with the intention of killing them so as to prevent the repossession. Defense counsel argued that defendant's conduct both during and after the shooting showed that defendant did not shoot with the intent to kill or harm King or Lawrence, but merely fired at the truck to stop it. During rebuttal closing argument, the State argued that "[defense] counsel tells you that his cli-

ent has to act intentionally and knowingly. He has to act intentionally means that he meant to shoot."

Although there is nothing in the transcript of proceedings regarding a question from the jury, the record contains a note asking, "Clarify 'intent to kill' " and, in another handwriting, "If a person aims and shoots a person does that mean 'intent' to kill'?" Printed beneath these questions are the words, "You have received." The jury returned verdicts of guilty on all charges.

Defendant filed a lengthy post-trial motion, which was denied. Prior to sentencing, defendant addressed the court. He expressed remorse for the shooting, but stated:

"I never went downstairs with the intent to cause any grave or great bodily harm to anyone. And I did run down the street shooting. But I never took any aim with the gun because I was just running, shooting. And it's a shame that someone got hurt while they were doing their job. I never intended that."

Before imposing sentence, the court responded:

"You have to take responsibility for your acts. You had the gun. You chased them. You shot the gun. You shot the gun at a person who's driving a tow truck. Like I said, maybe you didn't intend to hit him, but I don't know what you intended to do with that gun aiming it at that tow truck."

Sentences were imposed, and this timely appeal followed.

OPINION

We first consider defendant's contention that the trial court committed reversible error in preventing him from testifying to his state of mind and intent at the time of the shooting. Defendant argues that his intent was a crucial issue in the case concerning which he should have been allowed to testify.

It is fundamental that in a criminal case, when the intent, motive or belief of the accused is material to the issue of his guilt, he has a right to testify directly to that fact. (*People v. Biella* (1940), 374 Ill. 87, 28 N.E.2d 111; *People v. Keefe* (1991), 209 Ill. App. 3d 744, 567 N.E.2d 1052; *People v. Perry* (1974), 19 Ill. App. 3d 254, 311 N.E.2d 341.) Improper exclusion of state-of-mind testimony by an accused which is essential to his defense will ordinarily constitute reversible error unless other sufficient evidence of his intent is admitted at trial. *People v. Keefe*, 209 Ill. App. 3d at 752; *People v. Parker* (1990), 194 Ill. App. 3d 1048, 551 N.E.2d 1012.

In the present case, defendant was charged with attempted first-degree murder, which requires the specific intent to kill (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 9—1; *People v. Bland* (1992), 228 Ill. App. 3d 1080; *People v. Solis* (1992), 216 Ill. App. 3d 11, 576 N.E.2d 120). He was also charged with aggravated battery based on intentionally and knowingly causing great bodily harm and intentionally and knowingly causing bodily harm with the use of a deadly weapon. By the indictment language used and the statutory definition of these crimes, proof of specific intent was required (see *People v. Perry*, 19 Ill. App. 3d at 259).

The theory of defense in this case was that although defendant fired shots at the truck, he did not shoot at its occupants or intend to kill or harm either of them. The State argues that defendant presented evidence regarding his intent when he testified that he shot at the truck to delay or stop the two men.

This testimony concerned his objective in firing the shots, namely, to prevent his car from being towed away. It did not, however, directly relate to the issue of whether he intended to kill and/ or cause bodily harm to its occupants as the means by which to accomplish his objective. (*Cf. People v. Keefe*, 209 Ill. App. 3d at 752.) As set forth in our summary of facts, the prosecutor interposed a general objection to each of defense counsel's questions regarding whether defendant intended to kill or cause great bodily harm to King or Lawrence, and each objection was sustained. Since the prosecutor stated no grounds for making the objections and the trial court stated no basis for sustaining them, they are treated as having been made and sustained on grounds of relevancy. *People v. Keefe*, 209 Ill. App. 3d at 753.

The State confirms this in its brief, stating that defendant's subjective beliefs and intentions were not probative of his innocence, and that there was no issue as to his intent because, legally, his intent may be inferred from his actions of firing the gun. The State's position is wholly without merit.

In *People v. Biella* (1940), 374 Ill. 87, the court stated that the circumstances under which the act in question was done may serve to manifest the actions of the defendant and may overcome his declaration as to his intent, but he nevertheless has the right to testify to his intent and to have the circumstances surrounding the act considered in connection with that testimony. The supreme court in *Biella* found that the defendant had a valid defense theory and that the exclusion of the defendant's state-of-mind testimony therefore constituted reversible error.

■ In the instant case, there was no basis for the State's objections to defendant's highly relevant state-of-mind testimony, and there was no legitimate reason for the sustaining of those objections. Exclusion of defendant's testimony regarding his intent at the time of the shooting was error.

The State further asserts that defendant has waived the issue because he did not raise it at trial or include it in his post-trial motion. The State also argues that, even assuming error, it does not rise to the level of plain error. We disagree.

A reviewing court may apply the plain error rule where the trial error or defect affects substantial rights (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461), the evidence of guilt is close and the improperly excluded evidence may have affected the outcome of the proceedings (*People v. Sanders* (1983), 99 Ill. 2d 262, 457 N.E.2d 1251). The plain error doctrine is also applicable when the errors are so substantial as to reflect upon the fairness and impartiality of the trial, regardless of the closeness of the evidence. *People v. Sanders*, 99 Ill. 2d 262, 457 N.E.2d 1251; *People v. Keefe*, 209 Ill. App. 3d at 752-53.

In this case, defendant's state-of-mind testimony was highly material to the issues presented. Defendant never disputed, as King and Lawrence testified, that he shot at the truck. Although there were some contradictions in the evidence, such as differing testimony concerning the distance from which defendant fired the shots, the crucial issue in this case was whether he did so with the intent to kill and cause great bodily harm. Exclusion of defendant's testimony concerning his mental state at the time the shots were fired prevented the jury from considering evidence which went directly to an essential element of each of the specific intent offenses charged. The State had the burden of proving defendant's intent to kill and cause great bodily harm beyond a reasonable doubt. The exclusion of evidence which disputed an essential element of the crimes was, therefore, plain error.

The prejudice to defendant was compounded by the prosecutor's argument that defendant walked up and at close range fired into the cab at King. From this position, the State argued, defendant's intent could be inferred. More important, however, was the prosecutor's legal misstatement that the State's burden of proving intent was satisfied by the evidence that defendant intended to shoot the gun.

The error of the court's exclusion of highly relevant, properly admissible testimony as to defendant's state of mind, compounded

by the State's misstatement of the law on this crucial issue, may well have affected the outcome of the case. The unexplained note asking for clarification on the element of intent lends support for this conclusion. Notably, even the trial court acknowledged at sentencing that defendant may not have intended to kill King when he fired the shots, but that he, the trial judge, did not know what else defendant may have intended in aiming the gun at the tow truck and that defendant had to take responsibility for his actions in shooting the gun.

In conclusion, defendant's intent was the pivotal issue at trial. Exclusion of defendant's crucial testimony regarding his lack of intent was not harmless error; it was plain error requiring reversal of his conviction.

Although we conclude that the exclusion of defendant's testimony regarding his intent at the time of the shooting was reversible error, we also consider his contention that the trial court further erred in refusing to instruct the jury, as he requested, on the offense of reckless conduct. Defendant tendered three instructions, including Illinois Pattern Jury Instructions, Criminal, No. 5.01 (2d ed. 1981) which defines recklessness as follows:

"A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross [departure] from the *** care which a reasonable person would exercise in the situation."

In refusing the instructions, the court stated,

"From my view of the facts as given by the witnesses in this case, the defendant did in fact, in his own words when he testified that he took the weapon and shot at the tires. He shot at them. It wasn't recklessly. He didn't shoot up in the air. Maybe he did that with the first bullet as he so testified but the second bullet he shot directly at them in order to stop them. And I find that that does not come under the definition of reckless."

Both the State and the defendant are entitled to appropriate instructions which present their theories of the case to the jury. It is well settled that where there is even slight evidence in the record which, if believed by the jury, would reduce the crime to a lesser-included offense, an instruction defining the lesser offense should be given. (*People v. Perry* (1974), 19 Ill. App. 3d 254, 311 N.E.2d 341; *People v. Stevenson* (1990), 196 Ill. App. 3d 225, 553 N.E.2d 441; *People v. Willis* (1988), 170 Ill. App. 3d 638, 524 N.E.2d 1259.)

Where such evidence exists, the trial court may not weigh the evidence in deciding whether an issue has been raised entitling the defendant to the instruction. (*People v. Lyda* (1989), 190 Ill. App. 3d 540, 546 N.E.2d 29.) As stated by our supreme court in *People v. Bryant* (1986), 113 Ill. 2d 497, 502, 499 N.E.2d 413, an instruction on a lesser offense that is included in the one with which the defendant is charged "provides an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense."

A lesser-included offense is one which "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." (Ill. Rev. Stat. 1989, ch. 38, par. 2—9.) An included-offense instruction is proper where the charged greater offense requires the jury to find a disputed factual element, proof of which is not required for conviction of the lesser-included offense. *People v. Bryant*, 113 Ill. 2d at 507.

Defendant contends that under this statutory definition and case law, reckless conduct is a lesser-included offense of both attempted murder and aggravated battery (*e.g., People v. Stevenson*, 196 Ill. App. 3d 225, 553 N.E.2d 441 (attempted murder); *People v. Willis*, 170 Ill. App. 3d 638, 524 N.E.2d 1159 (aggravated battery)), because the elements of reckless conduct and the offenses of attempted murder differ only as to the mental state which must be proved. Defendant further maintains that there was sufficient evidence in the case at bar from which the jury could reasonably have concluded that he acted recklessly, rather than with the intent to kill or harm anyone. Defendant argues that when the court ruled that the instruction was not warranted because the court found that defendant did not act recklessly, the judge invaded the fact-finding function of the jury.

■ Without restating in detail the testimony summarized earlier, we find that there was sufficient evidence presented in support of defendant's theory of defense which, if believed by the jury, could have resulted in a conviction of the lesser offense of reckless conduct. There was evidence that defendant did not see any commercial identification on the truck, which he described to be a pickup truck; that the men did not respond when he shouted to them but, instead, hastily drove off with his car; that he was a considerable distance from the truck when he fired the first shot,

which he fired upward as a warning shot; and that it struck the boom protruding from the rear of the truck. Defendant testified that he fired the second shot toward the tires of the truck while still running after it; that the truck was moving quickly out of the lot; and that the movement of the truck caused the car to bounce up and down. Defendant, King, and Lawrence testified that defendant shot at the truck while defendant was running and shouting. There was no testimony that defendant walked up to the cab and shot directly at King. Indeed, Lawrence acknowledged that although defendant began running in a straight southward path toward the truck, he changed his direction slightly and ran behind the car rather than directly toward the driver's door. The evidence also established that as soon as he arrived back at his apartment, defendant called the police and reported that his vehicle had been stolen.

From the evidence in its entirety, the jury could have concluded that in shooting a gun while running after a moving vehicle occupied by two persons, defendant consciously disregarded the substantial risk that one or both of the persons would be struck by the bullets and that his disregard of this risk constituted a gross deviation from the care which a reasonable person, even one who believed that his car was being stolen, would exercise in the same situation.

The State does not concede that reckless conduct is a lesser-included offense of attempted murder and aggravated battery. The State argues, however, that even assuming it is, the jury was properly instructed on the element of intent, which may be inferred from the voluntary and willing conduct of the accused (*People v. Mitchell* (1991), 209 Ill. App. 3d 562, 568 N.E.2d 292); that the trier of fact has the responsibility to determine the credibility of witnesses; and that, here, "the jury did not accept defendant's rationalizations and determined that [he] intended to kill the two men." The State's arguments are disingenuous.

Defendant does not dispute that intent may be inferred from conduct, nor does he claim that the instructions on the offenses charged were improper. His contention is that he was entitled to instructions on his theory of the case. Defendant also agrees with the State's argument that it is the responsibility of the trier of fact to determine the credibility of the witnesses. Indeed, it is that very principle which underlies his assertion that the trial court improperly usurped that jury function by excluding his state-of-mind testimony based on the court's factual determination on the issue of his intent. The crux of the issues raised by the defendant on appeal is

that the jury was improperly precluded from hearing evidence supporting, and from considering the law applicable to, his theory of defense.

From its verdict, it is clear that the jury believed that defendant was guilty of something, but it was not provided with that "important third option" of finding defendant guilty of a lesser offense than those charged. (*People v. Bryant*, 113 Ill. 2d at 502.) In a jury trial, it is the province of the jury to determine whether defendant is guilty of the greater offense charged or of a lesser-included offense, and an instruction on the lesser offense must be given if there is any evidence which tends to prove the lesser crime. (*People v. Perry*, 19 Ill. App. 3d at 258.) Based on the entirety of the record before us, there was sufficient evidence, both correctly admitted and improperly excluded, to warrant the giving of defendant's instructions on the lesser offense of reckless conduct. The court's refusal to instruct the jury on reckless conduct was reversible error. See *People v. Stevenson*, 196 Ill. App. 3d 225, 553 N.E.2d 441; *People v. Willis* (1988), 170 Ill. App. 3d 638, 524 N.E.2d 1259.

For the reasons stated, defendant's convictions are reversed and this case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.