1-00-0628

FOURTH DIVISION

JANUARY 24, 2002

1-00-0628

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) 

)

LARRY MILLER, ) Honorable

) Lawrence P. Fox,

Defendant-Appellant. ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

Following a jury trial, defendant Larry Miller was convicted of first-degree murder in the shooting death of his wife, Rose Miller.  The circuit court sentenced defendant to 40 years' imprisonment.  On appeal defendant contends that: (1) the court erred in precluding him from testifying regarding his absence of motive and his state of mind; (2) the court erred in admitting evidence of prior incidents between him and Rose; (3) he was deprived of the presumption of innocence; (4) his fifth Amendment right to post-arrest silence was violated; (5) the State's closing argument denied him a fair trial; and (6) his sentence was excessive. 

Rose Miller, defendant's wife, was shot and killed in front of their home at 5919 S. Fairfield on September 19, 1998.  The couple had two children, William Brawder and Jasmine Collins, who were present at the time of the shooting.

The State presented the following evidence:

Asunsion Colin Bernal, who lived across the street from 5919 S. Fairfield, testified that on September 19, 1998, he was on his balcony when he saw defendant and Rose arguing on their front porch.  Rose was walking down the stairs with nothing in her hands.  As she reached the gate, defendant took out a chrome gun and shot her one time.  Bernal testified that there was nothing blocking his view.  

Rose's eleven year old nephew, Antonio Rowe testified that on the morning of September 19, he heard defendant and Rose arguing before defendant left the house. When defendant came home that night, Rowe saw him go into the basement, return carrying a dark colored duffle bag with a towel hanging out of it, and go out to the front porch.  Rowe heard a big boom followed by someone banging on the front door saying let me in.  William opened the door and defendant told him to call an ambulance.  Rowe saw defendant run into the basement holding the dark colored duffle bag.

Officer Mark Davis testified that when he responded to a call of a person shot at 5919 S. Fairfield on September 19, 1998, he saw the victim on the ground.  When he asked her who had shot her she responded my husband.  Davis found an expended  bullet on the stairs in front of the house.  He recovered a chrome-plated .357 magnum handgun containing two live rounds and a spent shell from a box in defendant's basement.

Officer Donald Barrett testified that during a pat down search of defendant he found six live bullets in defendant's pants pocket. Officer Kostecki testified that on September 19, 1998, he recovered an expended bullet from the stairs and a towel from the front porch at 5919 S. Fairfield.

Joseph Thibault, a forensic scientist with the Illinois State Police who tested the recovered evidence, testified that the fired bullet found on the porch was fired from the gun recovered from the basement "to the exclusion of all others."  The parties stipulated that Ellen Connolly, an expert in forensic science, would testify that the ripping, tearing, fiber melting, singing, and heavy deposit of gunshot residue on the towel recovered from the scene was consistent with contact shots from a gun.

Ethel Collins, Rose's mother, testified that she had a conversation with Rose on September 17, 1998, during which Rose stated that she was going to divorce defendant.  John Collins, Rose's brother, testified that he received a phone call from Rose on September 17, 1998, during which Rose stated that defendant had gone back to his old ways and that she was going to file for divorce.  John understood that to mean that defendant had resumed physically abusing Rose.

Anita Collins, Rose's sister, testified that she received a phone call from Rose on August 30, 1998.  She could hear defendant in the background yelling "why do you have to have your sister go everywhere with you?"  Then the phone went dead.  When Anita called back the phone was busy.  On May 4, 1993, while visiting Rose, Anita saw defendant push Rose, choke her, and pull her hair during an argument.  She heard defendant tell Rose "to get that shit out of your hair 'cause you're not going anywhere", referring to a hair weave.  Anita called police at Rose's request.

Officer Yvonne Delta testified that she investigated a domestic battery complaint at 5919 S. Fairfield on May 4, 1993.  Defendant answered the door and said they had not called police.  Delta saw red marks on Rose's neck and marks on her head where her hair had been pulled out.  Defendant, who appeared uninjured, was arrested.

Rose's friend, Carolyn Young, testified that on August 22, 1998, she and Rose had just arrived at Rose's house when defendant walked up to Rose and asked if he could talk to her.  When Rose responded that she did not want to argue, defendant grabbed her and said "bitch, you think you slick."  The three entered the house where the argument continued.  While Young was in another room, she heard glass breaking.  Young went to the bedroom where she saw Rose crying and a broken window. 

Defendant presented the following evidence:

Roger Chavers testified that in April 1998, while living in the second floor apartment at 5919 S. Fairfield, he heard defendant and Rose arguing, looked out his window, and saw Rose throw an unknown object at defendant.  

Defendant testified that the May 4, 1993 argument began when Rose yelled at him for embarrassing her the night before by asking her friend to leave.  According to defendant, Rose grabbed his arm and pushed him.  When police arrived defendant let them in and tried unsuccessfully to file charges against Rose.  Defendant stated that he was at work on August 22, 1998, and that the incident Young testified about never occurred.   

Defendant testified that he arrived home from work at 9:00 p.m. on September 19, 1998, and saw Rose sitting on the front porch.  He went inside, followed a few minutes later by Rose and  the two argued.  Rose went into the bathroom and then back to the front porch.  After Rose went outside, defendant went into the bathroom and found six bullets in the sink.  He picked them up and went to confront Rose.  As the two argued, Rose stuck a towel next to defendant's left side and he felt something pipe-like.  As the two fought over the object, the gun went off shooting Rose. Defendant tried to pull Rose into the house, but they slid down the steps towards the gate.  Defendant then grabbed the gun off the stairs and started banging on the door.  He told his son to call 911 and then took the gun into the basement.  

On cross-examination, defendant was shown his time sheets from work which he admitted did not indicate that he had worked on either August 22, 1998, or September 19, 1998.  Defendant denied telling Officer Davis that he and Rose "were playing" or that he shot Rose.  He denied telling Detective John Griffin that an unknown person shot Rose.  He claimed he never told Detective Paulnitsky that he was confronting Rose about an affair or that she reached into a brown bag and shot herself.  On re-direct he claimed that he told police that while he and Rose were sitting on the porch, she stuck a gun in his side and as they wrestled with the gun it went off.

After defendant unsuccessfully moved for a directed verdict, the State presented the following in rebuttal:

Anita Collins testified that on May 4, 1993, she did not hear the victim tell defendant that he embarrassed her by telling her friend to leave the night before.  She never saw Rose grab defendant by the arm that day.

Officer Delta stated that when she responded to the domestic battery call on May 4, 1993, defendant never said he wanted to file charges against his wife.

Officer Davis stated that when he spoke to defendant at the scene defendant told him "look man, we were playing" and "I shot her."  Defendant claimed the gun went off accidentally.  After reading defendant his 
Miranda
 rights, Davis asked him where the gun was.  Defendant responded "go downstairs in the basement up near the front, in a box, under some stuff."  Defendant did not mention that he had found bullets in the sink or that Rose stuck the gun in his side. 

Detective Griffin testified that when he spoke with defendant on September 19, 1998, defendant stated that he and his wife were on the porch arguing when an unknown person shot her.  Defendant did not tell him that Rose had a gun wrapped in a towel which she stuck in his side or that he found six bullets in the bathroom sink.

Detective Paulnitsky testified that defendant stated that when he confronted Rose about her extra-marital affair, she removed a gun from a brown bag and after struggling with defendant over the gun, shot herself.  When Paulnitsky confronted defendant with conflicting accounts, defendant changed his story stating that he had the gun wrapped in a brown towel and he "took Rose's life."

I

Defendant first contends that the circuit court erred in precluding him from presenting a defense by excluding his testimony regarding motive and intent. 

Defendant has waived this issue by failing to raise it in his post-trial motion.  
People v. Enoch
, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988).  Under the plain error rule, a reviewing court may consider an error not properly preserved for review when the error is of such magnitude that the commission thereof denies defendant a fair and impartial trial.  
People v. Shields
, 143 Ill. 2d 435, 575 N.E.2d 538 (1991).  A reviewing court has the discretion to consider errors not properly preserved at trial and may invoke the plain error rule 
sua
 
sponte
.  
People v. Davis
, 145 Ill. 2d 240, 528 N.E.2d 714 (1991).  Due to the gravity of the error in this case and in the interests of justice, defendant's failure to properly preserve this issue for review did not result in waiver.

It is fundamental that when the intent or motive of the accused is material to the issue of his guilt, he has a right to testify directly to that fact.  
People v. Upton
, 230 Ill. App. 3d 365, 595 N.E.2d 56 (1992); 
People v. Biella
, 374 Ill. 87, 28 N.E.2d 111 (1940).    Improper exclusion of such testimony by an accused which is essential to his defense constitutes reversible error unless other sufficient evidence of his intent or motive is admitted at trial.  
Upton
, 230 Ill. App. 3d at 371.

Defendant argues that the circuit court erred in excluding his testimony that he had contemplated divorcing Rose in 1995 and in 1997.  The State contends this evidence was properly excluded because it was too remote and therefore irrelevant to the issues in the case.  In the present case, motive was a key issue.  Beginning in opening statements the State told the jury that defendant killed his wife because she was leaving him.  The State continued this theme throughout their case-in-chief where they presented evidence of Rose's intent to divorce defendant and in closing argument where the State argued extensively that defendant killed his wife rather than let her go.  Defendant was precluded from testifying regarding his desire to divorce Rose and the steps he had taken to that end in 1995 and 1997.  Such testimony was clearly relevant to show the absence of the motive the State had assigned to defendant.    

Defendant further argues that he was improperly precluded from testifying regarding his state of mind.  He was not allowed to present testimony to rebut the State’s theory that he hid the gun in the basement exhibiting a consciousness of guilt.  In the absence of any explanation for defendant's conduct, the State  argued extensively in its closing argument that defendant's actions after Rose was shot showed his intent.  

The admission of evidence is a question reserved for the discretion of the circuit court and its decision will not be disturbed on review absent an abuse of that discretion.  
People v. Patterson
, 154 Ill. 2d 414, 610 N.E.2d 16 (1992).  Twice the court precluded defendant from testifying regarding a material issue in the case and then allowed the State to exploit the lack of defendant's testimony in closing arguments.  The circuit court abused its discretion 
in precluding defendant from testifying regarding his lack of motive and his state of mind.  The improper exclusion of this testimony in the present case constitutes reversible error.

In light of the above, defendant's remaining issues need not be addressed.

Accordingly, the judgment of the circuit court of Cook County  is reversed and this matter is remanded for a new trial.

Reversed and remanded. 

HOFFMAN, P.J. and THEIS, J., concur.