NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190069-U

NO. 4-19-0069

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| TRAVIONTE WILLIAMS, | ) | No. 09CF1862 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not err by dismissing defendant's *pro se* postconviction
petition at the first stage of the proceedings.

¶ 2    Defendant, Travionte Williams, appeals the January 8, 2019, order of the

Champaign County circuit court, summarily dismissing his *pro se* postconviction petition as

frivolous and patently without merit.  Defendant contends the circuit court's dismissal was

erroneous because he raised an arguable claim his trial counsel was ineffective for failing to

request a reckless conduct instruction and appellate counsel was ineffective for failing to raise

trial counsel's ineffectiveness on direct appeal.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In November 2009, the State charged defendant by indictment with one count of

attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)) and one count of

aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West Supp. 2009)). A brief description of the evidence at defendant's June 2010 jury trial relevant to understanding the issues on appeal follows.

¶ 5        Charles Arbour testified he purchased drugs from defendant, whom he knew as "Tray," approximately 10 times prior to the evening of October 30, 2009. Through their various transactions, Arbour accrued a $50 debt to defendant. Prior to the evening in question, Arbour stated neither he nor defendant threatened the other or displayed a weapon. On October 30, 2009, Arbour arranged to purchase $50 worth of marijuana from defendant and was told to meet defendant at an apartment complex to complete the transaction around 1 a.m.

¶ 6        Arbour stated he met defendant outside the apartment complex, and defendant handed him a bag of grass clippings, claiming it was marijuana. Arbour told defendant he would not pay for the grass clippings in the bag. Defendant told Arbour "he would be right back" and walked upstairs to the second level of the apartment complex taking the grass clippings with him. When defendant returned, he was carrying a gun. Arbour testified defendant then said, "give me the money or I'm gonna shoot 'ya." Arbour stated he was standing about four feet from defendant at the time.

¶ 7        According to Arbour, defendant pointed the gun at him and pulled the trigger, but the gun did not fire. Defendant "jacked the hammer," and Arbour then realized the gun was real. Arbour stated he "tried to get the gun down" and "knock the gun out of his hand or push it down" after the initial misfire. Arbour testified defendant again pointed the gun at him and pulled the trigger, this time striking Arbour with five bullets. Defendant continued firing shots at Arbour after Arbour fell to the ground when he was struck in the shoulder by a bullet. Arbour testified he did not "really believe it was a struggle" over the gun prior to defendant shooting

him.

¶ 8     The parties' stipulation regarding Arbour's injuries from the incident stated Kimberly Cradock, the trauma surgeon who treated Arbour, would testify to the following: (1) Arbour suffered five gunshot wounds on October 30, 2009, (2) Arbour's injuries required a transfusion of over 45 pints of blood, (3) Arbour's injuries were life-threatening, and (4) Arbour remained in the hospital until November 25, 2009.

¶ 9     Carrie Miller testified that, on the night at issue, she was walking with her friend Jennifer Rosemier when she saw two men arguing outside an apartment complex. Though she could not hear the conversation, Miller believed she saw the two shove each other at one point, though she did not see any punches thrown. Miller then heard five or six gunshots and saw fire coming from the end of a gun in one of the person's hands. Miller stated she saw one of the people in the argument fall to the ground and then she ran from the scene. According to her testimony, the man Miller saw fall to the ground never pointed a weapon at the other man.

¶ 10    Rosemier testified she noticed people arguing but could not make out what the people were arguing about. She saw "a little bit of shoving." One of the parties to the argument then raised his arm and fired at the other person, causing him to fall to the ground. Rosemier stated she heard about five shots and saw fire coming from the gun as the shots were fired. When the shots were fired, the individual who was shot did not have a weapon and was not in physical contact with the individual firing the gun.

¶ 11    Urbana police sergeant Harley Rutledge was standing outside the police station on the night at issue when he heard gunshots coming from nearby. Rutledge testified he heard an initial group of four or five shots, a brief pause, and two more shots. Rutledge stated he could not be certain the two groups of shots were from the same gun or were fired in the exact same

- 3 -

area, though he thought they all came from the same direction and sounded similar. After hearing the shots, Rutledge drove to the crime scene, which was approximately 1.7 miles away from the police station by car but significantly closer in straight-line distance. At the scene, Rutledge observed six spent .380-caliber shell casings from what he thought was a semiautomatic handgun. The casings location and proximity to each other indicated the shooter did not move much while firing. Rutledge estimated all six shell casings were located within three to five feet of where Arbour had been found. Additionally, Rutledge testified a person firing a semiautomatic weapon would typically have to pull the trigger once for each round fired.

¶ 12 Urbana police officers Matthew Quinley and Duane Smith both testified they interviewed defendant at the Urbana police department on October 30, 2009. According to Officer Quinley, defendant first denied knowing Arbour and told officers he was not involved in the shooting at his girlfriend's apartment complex. Eventually, defendant told investigators he had not been truthful with them and asked if he could "start over." Officer Quinley further testified defendant admitted meeting with Arbour to sell him $50 worth of marijuana but defendant said Arbour was not happy with what defendant offered him and refused to pay for it. Defendant explained Arbour started to walk away and he reached for Arbour. Thereafter, a struggle ensued during which Arbour began hitting him, and he pulled out a handgun and shot Arbour. According to Officer Quinley, defendant told investigators he pulled the gun out of his pocket, pointed it at Arbour, closed his eyes, and pulled the trigger. Officer Quinley testified defendant told the investigators the gun had an unlimited trigger, meaning if the shooter pulled the trigger and held it down the gun would fire continuously until it was out of ammunition. After defendant shot Arbour, he dropped the weapon and ran. Additionally, Officer Quinley testified it was possible for an automatic weapon to fire the type of ammunition recovered from

- 4 -

the crime scene. He also testified it was possible to modify a semiautomatic handgun to fire automatically. Officer Smith testified defendant stated he started with the gun pointed down but after he pulled the trigger once, the gun kept firing and he raised it up with his eyes closed until it stopped firing.

¶ 13 Defendant testified he spoke to Arbour about five times between midnight and 1 a.m. on October 30, 2009, and eventually arranged to get marijuana for Arbour through a third party. When Arbour arrived at the apartment complex, defendant went to get the marijuana while Arbour waited in the parking lot. That evening defendant was carrying a handgun because he had received threating telephone calls. After defendant returned with the marijuana and gave it to Arbour, Arbour insisted the substance in the bag was not marijuana. Defendant told Arbour to give him back the bag if he did not want it, but Arbour refused to return it.

¶ 14 Defendant testified he attempted to take the bag out of Arbour's hand and a struggle ensued. Arbour overpowered defendant, put him in a headlock, and started choking him. Arbour choked defendant for about 20 seconds, and defendant had trouble catching his breath. Defendant stated he felt the only way he could defend himself was by using the handgun he was carrying.

¶ 15 Defendant pulled the gun out of his right back pants pocket, closed his eyes, and began firing with the gun pointed at the ground. The kick of the gun caused defendant's hand to move up. Though he claimed he only pulled the trigger one time, defendant stated the gun fired multiple times. When defendant opened his eyes and looked up, he saw Arbour lying on the ground, dropped the gun, and ran. Defendant stated he did not intend to kill Arbour when he pulled the trigger but only intended to protect himself.

¶ 16 On cross-examination, defendant testified he sold drugs to Arbour on several

occasions and he trusted Arbour to pay him in a timely manner. Defendant did not generally carry a gun when he met with Arbour but began carrying one after receiving threats from others. Defendant had never previously fired the gun. In addition, defendant stated that, while he and Arbour were struggling with each other, he never saw a weapon in Arbour's hands and Arbour never threatened him with a weapon. The prosecutor then asked defendant if he told the investigating officers Arbour had choked him, and defendant stated he told the officers Arbour choked him. Finally, after first insisting he fired the gun at the ground, defendant admitted he raised the gun up to shoulder height, though he insisted the kick from the gun caused his arm to raise up.

¶ 17        The jury found defendant not guilty of attempt (first degree murder) but guilty of aggravated battery with a firearm. In June 2010, defendant filed a motion for acquittal or a new trial. At a July 2010 hearing, the trial court denied defendant's motion for acquittal or a new trial and sentenced him to 18 years' imprisonment with credit for 265 days spent in pretrial custody. In addition to his prison sentence, the court imposed a $5 drug-court fee, a $25 Violent Crime Victims Assistance (VCVA) fine, and a $100 trauma-fund fine. In August 2010, defendant filed a motion to reconsider his sentence, which the court denied.

¶ 18        Defendant appealed and argued (1) he received ineffective assistance from trial counsel where counsel failed to impeach Arbour by introducing evidence regarding Arbour's "pending case," (2) his $25 VCVA fine must be reduced because the court imposed additional fines, and (3) he was entitled to a $5-per-day credit against his drug-court fee for time he spent in pretrial custody. The State conceded (1) defendant's VCVA fine should be reduced from $25 to $12 and (2) defendant was due a *per diem* credit of $5 a day against his drug-court fee. In January 2012, this court rejected defendant's claim of ineffective assistance of counsel and

amended his fines and fees order. *People v. Williams*, 2012 IL App (4th) 100710-U, ¶¶ 40, 48.

¶ 19    On December 10, 2014, defendant filed a "Pro Se Petition to Vacate and Void the Judgment and Sentence," which was treated as a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-1401 (West 2014)). In the petition, defendant challenged the constitutionality of the statute for aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West Supp. 2009)). The State moved to dismiss the petition, and the circuit court dismissed the petition, finding it was patently without merit and did not state a cause of action. Defendant appealed, and this court affirmed the circuit court's dismissal. *People v. Williams*, 2017 IL App (4th) 150105-U.

¶ 20    In January 2019, defendant filed *pro se* the petition for relief under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) at issue in this appeal. In his postconviction petition, defendant argued (1) the State presented perjured testimony from Arbour, the victim; (2) a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), occurred when the victim's inconsistent statements were withheld; (3) the jury acquittal for attempt (first degree murder) was inconsistent with his conviction for aggravated battery with a firearm; (4) his attorney should have required jury instructions for reckless conduct; and (5) his 18-year sentence was excessive. On January 8, 2019, the circuit court filed a written order, dismissing defendant's petition at the first stage of the postconviction proceedings.

¶ 21    On January 25, 2019, defendant filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606(c) (eff. July 1, 2017). See Ill. S. Ct. R. 651(d) (eff. July 1, 2017) (providing the supreme court rules governing criminal appeals apply to appeals in postconviction proceedings). Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 22                                    II. ANALYSIS

¶ 23          The Postconviction Act "provides a mechanism for criminal defendants to

challenge their convictions or sentences based on a substantial violation of their rights under the

federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1074-75

(2010).  A proceeding under the Postconviction Act is a collateral proceeding and not an appeal

from the defendant's conviction and sentence. *People v. English*, 2013 IL 112890, ¶ 21, 987

N.E.2d 371.  The defendant must show he suffered a substantial deprivation of his federal or

state constitutional rights. *People v. Caballero*, 228 Ill. 2d 79, 83, 885 N.E.2d 1044, 1046

(2008).

¶ 24          The Postconviction Act establishes a three-stage process for adjudicating a

postconviction petition. *English*, 2013 IL 112890, ¶ 23.  Here, defendant's petition was

dismissed at the first stage.  At the first stage, the circuit court must review the postconviction

petition and determine whether "the petition is frivolous or is patently without merit."  725 ILCS

5/122-2.1(a)(2) (West 2018).  To survive dismissal at this initial stage, the postconviction

petition "need only present the gist of a constitutional claim," which is "a low threshold" that

requires the petition to contain only "a limited amount of detail." *People v. Gaultney*, 174 Ill. 2d

410, 418, 675 N.E.2d 102, 106 (1996).  Our supreme court has held "a *pro se* petition seeking

postconviction relief under the [Postconviction] Act for a denial of constitutional rights may be

summarily dismissed as frivolous or patently without merit only if the petition has no arguable

basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209

(2009).  A petition lacks an arguable legal basis when it is based on an indisputably meritless

legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16,

912 N.E.2d at 1212.  A petition lacks an arguable factual basis when it is based on a fanciful

factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Hodges*, 234 Ill. 2d at 16-17, 912 N.E.2d at 1212. "In considering a petition pursuant to [section 122-2.1 of the Postconviction Act], the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." 725 ILCS 5/122-2.1(c) (West 2018); see also *People v. Brown*, 236 Ill. 2d 175, 184, 923 N.E.2d 748, 754 (2010).

¶ 25 Our review of the first-stage dismissal of a postconviction petition is *de novo*. *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 20, 963 N.E.2d 394. With the *de novo* standard, the reviewing court affords no deference to the circuit court's judgment or reasoning. *People v. Walker*, 2018 IL App (1st) 160509, ¶ 22, 128 N.E.3d 978. Essentially, the reviewing court performs the same analysis the circuit court would have performed. *Walker*, 2018 IL App (1st) 160509, ¶ 22. Additionally, the reviewing court may affirm the circuit court's judgment on any basis found in the record. *Walker*, 2018 IL App (1st) 160509, ¶ 23.

¶ 26                                    A. Forfeiture

¶ 27 On appeal, defendant contends he received ineffective assistance of trial counsel because counsel failed to request a reckless conduct instruction. In his brief, defendant expressly states his claim was apparent from reading the record on appeal and should have been raised on direct appeal. However, he contends the issue should not be deemed waived because appellate counsel's failure to raise the claim on direct appeal amounted to ineffective assistance of appellate counsel. The State argues defendant did not raise an ineffective assistance of appellate counsel claim in his *pro se* postconviction petition. As such, the State contends we should find defendant's claim forfeited and affirm the circuit court's judgment. See *People v. Jones*, 213 Ill. 2d 498, 505, 821 N.E.2d 1093, 1097 (2004) (noting our supreme court has generally held a claim

not raised in a postconviction petition cannot be argued for the first time on appeal).  Defendant

disagrees, claiming his petition inartfully stated the gist of a constitutional claim of ineffective

assistance of appellate counsel.

¶ 28          In his postconviction petition, defendant argued counsel violated the sixth

amendment (U.S. Const., amend. VI) when counsel failed to ask the court to give jury

instructions on reckless conduct.  He contended counsel was aware reckless conduct was a

lesser-included offense.  Defendant asserted counsel's actions deprived him of a fair trial and

were not trial strategy.  According to defendant's petition, counsel "could have gotten defendant

a lesser sentence."  He noted the jury did believe defendant "acted in somewhat self-defense."  In

his petition, defendant was clearly referring to his trial counsel's actions and not appellate

counsel's.  Defendant does not assert any of the exhibits he submitted with his petition indicate

he was also raising a claim of ineffective assistance of appellate counsel.  The petition itself

makes no mention of an appeal or counsel's failure to raise the issue previously.  Even with the

most liberal construction of defendant's petition, defendant does not raise a claim of ineffective

assistance of counsel regarding appellate counsel's actions.  See *People v. Cole*, 2012 IL App

(1st) 102499, ¶ 14, 977 N.E.2d 1189 (rejecting the argument " 'implicit' claims of ineffective

assistance of appellate counsel fall within the 'liberal construction' mandate for review of *pro se*

postconviction petitions.")  Defendant contends this court should overlook forfeiture citing

*People v. Moore*, 177 Ill. 2d 421, 427-28, 686 N.E.2d 587, 591 (1997).  There, our supreme court

noted the strict application of *res judicata* and the "waiver" rule applicable to issues raised or

which could have been raised on direct appeal will be relaxed in postconviction proceedings

"where 'fundamental fairness' so requires."  *Moore*, 177 Ill. 2d at 427, 686 N.E.2d at 591

(quoting *People v. Whitehead*, 169 Ill. 2d 355, 371, 662 N.E.2d 1304, 1312 (1996)).  Here, the

State has asserted forfeiture based on a failure to raise the issue in the postconviction petition. Our supreme court has emphasized this court is not free to excuse an "appellate waiver" caused by the defendant's failure to include issues in his or her postconviction petition. *Jones*, 213 Ill. 2d at 508, 821 N.E.2d at 1099. Thus, we agree with the State defendant has forfeited his issues on appeal.

¶ 29                          B. Ineffective Assistance of Counsel

¶ 30          Even absent forfeiture, defendant fails to show he stated the gist of a constitutional claim of ineffective assistance of trial counsel. This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. The *Strickland* Court noted a case should be decided on the ground of lack of sufficient prejudice rather than counsel's constitutionally deficient representation if it is easier to do so. *Strickland*, 466 U.S. at 697.

¶ 31        In his original brief, defendant contends he stated the gist of a constitutional claim

his trial counsel was ineffective for failing to request a reckless conduct instruction where some

evidence was presented at trial that would support the instruction.  In support of his claim, he

cites several cases where the reviewing court addressed whether the trial court erred by refusing

to give tendered instructions on a lesser-included offense.  See *People v. McDonald*, 2016 IL

118882, 77 N.E.3d 26; *People v. Williams*, 293 Ill. App. 3d 276, 688 N.E.2d 320 (1997); *People

v. Upton*, 230 Ill. App. 3d 365, 595 N.E.2d 56 (1992).  Only defendant's concluding sentence on

this argument cited to a case that actually addressed ineffective assistance of counsel related to

jury instructions.  See *People v. DuPree*, 397 Ill. App. 3d 719, 731, 922 N.E.2d 503, 514 (2010).

¶ 32        In *People v. Brocksmith*, 162 Ill. 2d 224, 229, 642 N.E.2d 1230, 1232 (1994), our

supreme court held a defendant has the exclusive right to decide whether to submit a jury

instruction on a lesser-included offense at the conclusion of the evidence.  Later, in *People v.

Medina*, 221 Ill. 2d 394, 405-06, 851 N.E.2d 1220, 1226 (2006), the supreme court further

explained a defendant's decision to tender a lesser-included offense instruction as follows:

>        "A defendant is entitled to a lesser-included offense instruction only if the
>
>        evidence at trial is such that a jury could rationally find the defendant guilty of the
>
>        lesser offense, yet acquit him of the greater.  [Citations.]  That evidentiary
>
>        prerequisite must be met before a right to have the jury instructed on a lesser-
>
>        included offense arises.  [Citation.]  Therefore, if the defendant chooses to submit
>
>        a lesser-included offense instruction, he is acknowledging, indeed arguing, that
>
>        the evidence is such that a rational jury could convict him of the lesser-included
>
>        offense, and he is exposing himself to potential criminal liability, which he
>
>        otherwise might avoid if neither the trial judge nor the prosecutor seeks the

pertinent instruction. [Citation.] If, on the other hand, the defendant chooses to forgo the opportunity to tender a lesser-included offense instruction, the defendant might be passing up an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense. [Citation.] In order to make an intelligent and informed decision in that regard, the defendant obviously requires the advice of counsel to aid the defendant in evaluating the evidence and to apprise the defendant of any potential conflicts with the defense strategy pursued to that point in the trial, functions that a trial judge cannot perform for the defendant. As members of this court have observed, the decision whether to tender a lesser-included offense instruction partakes of, and is unavoidably intertwined with, strategic trial calculations, matters within the sphere of trial counsel." (Internal quotation marks omitted.)

¶ 33   In his initial brief, defendant fails to address how trial counsel's performance interfered with defendant's decision not to tender a jury instruction on reckless conduct. Instead, defendant focuses on the sufficiency of the evidence for giving such an instruction. Defendant's bare and conclusory allegations in his postconviction petition that defense counsel knew reckless conduct was a lesser-included offense and was ineffective for failing to tender an instruction on reckless conduct were insufficient to show how trial counsel did not fulfill his role as explained in *Medina*.

¶ 34   For the first time in his reply brief, defendant asserted his petition indicated defendant believed a reckless conduct instruction was warranted but his trial counsel only proceeded with a theory of self-defense. Illinois Supreme Court Rule 341(h)(7) (eff. May 25,

- 13 -

2018) provides "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." More than a century ago, our supreme court explained the reasoning behind the rule as follows: " 'Under the rules of this court and its long[-]settled practice, questions not raised *** in the original brief cannot be raised in the reply brief. A contrary practice would permit [movants] to argue questions in their reply briefs as to which counsel for [their opponents] would have no opportunity to reply. Th[ese] question[s] therefore need not be considered.' " *People v. English*, 2011 IL App (3d) 100764, ¶ 22, 952 N.E.2d 677 (quoting *Holliday v. Shepherd*, 269 Ill. 429, 436, 109 N.E. 976, 979 (1915)). Thus, defendant could not raise this argument for the first time in his reply brief.

¶ 35    Regardless, defendant did not comply with section 122-2 of the Postconviction Act's supporting document requirement in his ineffective assistance of counsel claim. In *People v. Collins*, 202 Ill. 2d 59, 62, 782 N.E.2d 195, 196 (2002), the defendant filed a *pro se* postconviction petition alleging his trial counsel failed to assist him in filing an appeal and seeking a reduction of his sentence. The defendant provided a sworn verification of his petition but did not attach any other supporting documentation. *Collins*, 202 Ill. 2d at 62, 782 N.E.2d at 196. The circuit court summarily dismissed the defendant's petition at the first stage. *Collins*, 202 Ill. 2d at 62, 782 N.E.2d at 196. On review, the supreme court found the defendant did not comply with the requirements of section 122-2 because his petition was not supported by documentation and did not explain the absence of such documentation. *Collins*, 202 Ill. 2d at 66, 782 N.E.2d at 198. The supreme court further found the defendant's failure to comply with section 122-2 justified the summary dismissal of his postconviction petition. *Collins*, 202 Ill. 2d at 66, 782 N.E.2d at 198. Here, defendant's petition was not even verified. Defendant also did not include any supporting documentation, such as his own affidavit, or explain why such

documentation was absent that showed how trial counsel did not fulfill his role as described in *Medina*. Such evidence would have been outside the record, and thus supporting documents were necessary.

¶ 36  Accordingly, we find the circuit court properly dismissed defendant's postconviction petition at the first stage of the proceedings.

¶ 37        III. CONCLUSION

¶ 38  For the reasons stated, we affirm the Champaign County circuit court's judgment.

¶ 39  Affirmed.